## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF ILLINOIS
## URBANA DIVISION

_____

| | | |
|---|---|---|
| BERTAM MUSIC CO., FLYTE TYME TUNES, EMI APRIL MUSIC INC., SOUP SANDWICH MUSIC, GOLD & IRON MUSIC PUBLISHING, XM MUSIC, LELLOW PRODUCTIONS INC., BOOK OF DANIEL MUSIC, EMI VIRGIN MUSIC, INC., MASS CONFUSION MUSIC, WB MUSIC CORP., 2000 WATTS MUSIC, INC., TONI ROBI MUSIC, RODSONGS, JOBETE MUSIC CO., INC., BLACK BULL MUSIC, INC., CANCELLED LUNCH MUSIC, UNIVERSAL-POLYGRAM INTERNATIONAL PUBLISHING, INC., DE SWING MOB, INC., ACROSS 110TH STREET PUBLISHING, AL B. SURE INDUSTRIES, INC., E/A MUSIC, INC., MONTY SEWARD PUB., CO., MAKE IT BIG MUSIC, BROCKMAN ENTERPRISES, INC. (LIBREN MUSIC DIVISION), BRENDA RICHIE PUBLISHING, and UNCLE RONNIE'S MUSIC COMPANY, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | Case No. 09-CV-2253 |
| v. | ) ) | |
| P & C ENTERPRISES, INC., LONNIE E. CLARK, and J.W. PIRTLE, | ) ) ) | |
| Defendants. | ) | |

### OPINION

This case is before the court for ruling on the Motion for Summary Judgment (#35) filed by Plaintiffs and the Motion for Summary Judgment (#38) filed by Defendant, J.W. Pirtle.  This court has carefully and thoroughly reviewed the arguments of the parties and the documents provided to this court.  Following this review, Defendant Pirtle's Motion for Summary Judgment (#38) is DENIED and Plaintiffs' Motion for Summary Judgment on Causes of Action 1 - 5 and 7 - 17 (#35) is GRANTED as to Defendants Pirtle and P & C Enterprises, Inc.  This court also accepts the Report

and Recommendation (#46) filed by Magistrate Judge David G. Bernthal in this case. Accordingly, the Motion to Dismiss (#36) filed on behalf of Defendant Lonnie E. Clark is DENIED.

FACTS[1]

Plaintiffs are the owners of valid copyrights in the 16 songs at issue in this case. Each Plaintiff is a member of the American Society of Composers, Authors and Publishers (ASCAP) and has granted ASCAP a nonexclusive right to license the nondramatic performances of their copyrighted musical compositions.[2]

Defendants Lonnie E. Clark and J.W. Pirtle formed a corporation, Defendant P & C Enterprises, Inc. (P & C). P & C owns and operates a radio station named WBCP. WBCP has been broadcasting since 1989 and currently broadcasts over the airwaves and via the internet. WBCP broadcasts music on a daily basis. P & C is a for profit corporation whose only business is the operation of the radio station. Pirtle testified at his deposition that he and Clark are the two stockholders in P & C. Clark was the president of P & C and Pirtle was, and still is, Secretary, Treasurer and Vice President of P & C. Pirtle and Clark each have 50% of the voting rights in P & C and agreed to take equal parts of the profits generated by P & C. Pirtle testified that P & C's only source of revenue is advertising on WBCP from local businesses and local churches. Pirtle testified that he writes up the advertisements and Sam Britten, who Pirtle supervises, produces some of the

---

[1] The facts are taken from the statements of undisputed facts and supporting documents provided by the parties. This court has only included facts which are adequately supported by the record in this case.

[2] ASCAP is a clearinghouse for copyright owners and users and was organized to reduce the transactional and enforcement costs that would otherwise be incurred in reaching agreements with each individual copyright holder. See Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1226 n.1 (7th Cir. 1991), citing Broadcast Music, Inc. v. Columbia Broadcasting Sys., 441 U.S. 1, 4-5 (1979).

advertisements. P & C generated revenues in excess of $100,000 per year during the years 1995 through 2002, but that has fallen off recently due to the economy.

Pirtle testified that his children own title to the real property and building where P & C's offices are located and where WBCP broadcasts. P & C pays rent to Pirtle for occupying the property. Pirtle testified that he used the payments to pay down a mortgage on the property held by "the bank." Pirtle reported these rent payments as income on his personal tax return. Pirtle also testified that he has loaned money to P & C and P & C owes him "probably 25,000" dollars.

Pirtle testified that Clark "pretty well managed everything at the radio station because he was there almost every day." This included supervising, hiring and firing employees. Pirtle testified that he occasionally "runs" radio shows broadcast by WBCP and sometimes sits in on the show Straight Talk Live. Pirtle is involved in the management of WBCP. He testified that employees at WBCP would stop playing any music he told them to stop playing and that he could unplug music being played at WBCP "at any time." Pirtle testified that both he and Clark had the ability to supervise and control the activities of P & C's employees and "control everything that gets broadcast out of that station." Pirtle testified that both he and Clark paid bills for P & C and both of them signed checks for P & C.

Sam Britten testified that he is the station coordinator for WBCP and "is the coordinator of practically all of it" when determining what WBCP airs on a day-to-day basis. Britten confirmed that both Clark and Pirtle have been "in a position to monitor what broadcasts are aired if [they] so chose." All of the employees in charge of pressing buttons to control what airs on WBCP report to Clark and Pirtle. Britten testified that Clark and Pirtle controlled and supervised all of the employees of WBCP on a day-to-day basis and "[p]retty much" controlled "all aspects of [WBCP]."

3

Pirtle testified that he, Clark and Britten determined the programming format of radio station WBCP, which has remained generally the same for "[a]t least the last ten years." Defendants have no record or log, or any other document, detailing the programming on WBCP.

The evidence shows that WBCP entered into a local radio station license agreement with ASCAP in May 1990. This agreement authorized Defendants to perform lawfully any and all copyrighted musical compositions in the ASCAP repertory. On November 10, 1993, as a result of Defendants' failure to pay ASCAP the license fees provided for in the agreement, ASCAP sent a notice to WBCP and terminated the license. The Notice stated that "any performances of copyrighted musical compositions in [ASCAP's] repertory without advance permission from the respective members concerned will constitute infringements of the respective copyrights."

In 1995, some of ASCAP's members filed suit against Clark and P & C for willful copyright infringement. See Flyte Time Tunes, et al. v. P & C Enterprises, Inc. et al., Case No. 95-CV-2208. Pirtle was later added as a defendant. The case concluded with P & C, Clark and Pirtle entering into a consent judgment providing that P & C would pay the judgment amount of $15,800. Clark and Pirtle executed agreements to toll the statute of limitations as to all claims that could be asserted against them subject to P & C's payment of the full judgment amount of $15,800.

Subsequently, P & C was having difficulty meeting its responsibilities to pay ASCAP. On May 22, 1997, Pirtle wrote a letter to ASCAP regarding P & C's financial problems. Between February 27, 1996, and December 1, 1999, Defendants, through WBCP, again broadcast performances of works in the ASCAP repertory without a license. Consequently, on December 1, 1999, members of ASCAP sued Pirtle, Clark and P & C for copyright infringement. See Nick-O-Val Music et al. v. Lonnie E. Clark, et al., Case No. 99-CV-2309. This case concluded with Pirtle,

Clark and P & C entering into a consent judgment for $10,000 on February 14, 2000. In February 2000, Defendants entered into a license agreement with ASCAP.

At some point prior to February 8, 2007, Defendants stopped paying license fees to ASCAP. ASCAP notified Defendants, by regular mail and certified mail, return receipt requested, that P & C's failure to pay license fees was a substantial default of its license agreement and the license would be terminated unless all payments were made. On March 4, 2008, ASCAP sent notice to Defendants, both by regular mail and certified mail, return receipt requested, that their license was terminated for their failure to pay the required fees. The letter stated that the balance due was $5,180.50. ASCAP also warned Defendants that they no longer had permission to broadcast performances of ASCAP's members' copyrighted musical compositions over WBCP and that any subsequent performances of copyrighted musical compositions in the ASCAP repertory without advance permission from copyright owners would constitute infringements of copyright. ASCAP provided Defendants with a CD-ROM that contained an extensive, searchable database of works in the ASCAP repertory.

On May 7 and May 8, 2008, Dan Hughes, a National Aircheck Field Recorder, recorded broadcasts of WBCP. On January 26 and 27, 2009, Anna Flood, who is also a National Aircheck Field Recorder, recorded broadcasts of WBCP. These recordings were transmitted electronically to Robert A. Wexler, president of National Aircheck. Wexler converted these recordings of WBCP's over-the-air broadcasts to two compact discs. Wexler sent the two compact discs to ASCAP's offices in New York. Oleksander Kuzyszyn is an employee of ASCAP and analyzed the recordings. Kuzyszyn is a professional musician, whose training enables him to read and write musical notation and readily identify works he hears performed. Kuzyszyn listened to the recordings

of broadcasts made on May 8 and 9, 2008, and January 26 and 27, 2009. Kuzyszyn determined that the following songs were on the compact disc of the broadcasts from May 8 and 9, 2008: "BEING WITH YOU," "YOU'RE NOT MY KIND OF GIRL," "THERE'S HOPE," "NO ONE," and "LIKE YOU'LL NEVER SEE ME AGAIN." Kuzyszyn also determined that the following songs were on the compact disc of the broadcasts from January 26 and 27, 2009: "THE LADY IN MY LIFE," "OVERJOYED," "ALL THIS LOVE," "LOVE OF MY LIFE," "FOREVER MY LADY," "SAY AMEN," "JESUS IS LOVE," "DON'T YOU KNOW THAT" and "BREAKIN' MY HEART (PRETTY BROWN EYES)." Kuzyszyn also determined that the songs "I CARE 4 U" and "MY BODY" were on the compact disc of the broadcasts from January 26 and 27, 2009. As noted previously, the evidence shows that Plaintiffs own valid copyrights in these 16 songs and that they have granted ASCAP the nonexclusive right to license the nondramatic public performance of these songs.

The evidence shows that WBCP and its employees make no efforts to ensure that WBCP does not broadcast performances of songs that are in ASCAP's repertory. Britten testified that Clark and Pirtle never even talked to him about it. Pirtle testified that he does not check on the music being played on any regular basis. Britten testified that he has "no idea" whether the works WBCP continues to broadcast include works in ASCAP's repertory and admitted "it's possible they could be, yes."

## PROCEDURAL HISTORY

On October 13, 2009, Plaintiffs filed a Complaint (#1) against Defendants. Plaintiffs alleged 17 causes of action for copyright infringement based on Defendants' public performances of copyrighted musical compositions. All three Defendants, represented by the same attorney, filed

an Answer (#14, #15, #16) to the Complaint. There were numerous problems and delays in conducting discovery in this case which caused Plaintiffs to file motions to compel.

On December 16, 2010, Defendants Pirtle and P & C filed a Statement Noting a Party's Death (#30) and stated that Defendant Clark died on December 10, 2010. This Statement was served only upon counsel for Plaintiffs. On March 15, 2011, Plaintiffs filed a Motion to Extend the Rule 25(a)(1) Deadline for Filing a Motion to Substitute Party (#34). Plaintiffs stated that they have not been notified, and their own investigation has not shown, that a petition for letters of office for Clark or his estate has been filed. Plaintiffs asked for an order extending the time for the substitution of parties until 56 days following the date that Defendants' counsel identified the proper party to be substituted. On April 8, 2011, United States Magistrate Judge David G. Bernthal entered a text order and granted Plaintiffs' Motion (#34). Judge Bernthal stated that Plaintiffs' deadline to file a substitution of party was extended to 56 days after Defendants' counsel notifies Plaintiffs' counsel of the proper successor, representative or other special administrator substitute.

On March 22, 2011, Plaintiffs filed their Motion for Summary Judgment on Causes of Action 1 - 5 and 7 - 17 (#35). Plaintiffs stated that they were not seeking summary judgment of infringement as to their sixth cause of action regarding the song, "HEAVEN KNOWS." Plaintiffs attached voluminous documentation in support of their claims regarding the 16 songs at issue. The documentation included true and correct copies of the copyright certificates, assignments, notices of termination, merger certificates and related documents for each of the 16 songs. Plaintiffs also provided the sheet music for 14 of the songs (there is no sheet music for two of the songs) and copies of each Plaintiff-copyright owner's ASCAP membership agreement. In addition, Plaintiff provided the two compact discs containing the recordings of WBCP's broadcasts. Plaintiffs also

submitted the affidavit of Hugo Del Bove, Radio Accounts Manager for ASCAP. Del Bove stated that, on the basis of financial information provided by Defendants, he estimated that if WBCP had been properly licensed by ASCAP to date, license fees owed would total approximately $15,000, including late payment charges of approximately $3,100.

On April 11, 2011, Defendants' counsel filed a Motion to Dismiss (#36) asking that Clark be dismissed as a Defendant due to his death. Defendants' counsel attached a copy of Clark's death certificate. Also on April 11, 2011, Pirtle filed a Motion for Summary Judgment (#38). Pirtle argued that he was entitled to summary judgment as to Plaintiffs' infringement claims because there was no basis for piercing P & C's corporate veil and subjecting him to personal liability. Pirtle attached his own affidavit as the only documentation in support of his motion. However, the affidavit is not signed, dated or notarized. The motion to dismiss and motions for summary judgment are fully briefed and ready for ruling.

## ANALYSIS

## I. MOTION TO DISMISS

This court will first consider the Motion to Dismiss (#36) seeking the dismissal of Defendant Clark from this action based upon his death. The Motion to Dismiss stated that more than 90 days had elapsed since service on Plaintiffs of the notice of Clark's death and no motion for substitution had been made by any party. Rule 25(a)(1) of the Federal Rules of Civil Procedure provides:

> If a party dies and the claim is not extinguished, the court may order substitution of the proper party. A motion for substitution may be made by any party or by the decedent's successor or representative. If the motion is not made within 90 days after service

> of a statement noting the death, the action by or against the decedent
>
> must be dismissed.

Fed. R. Civ. P. 25(a)(1).

Plaintiffs filed a Response to the Motion to Dismiss (#43) on April 28, 2011. Plaintiffs noted that the deadline for substituting a party for Defendant Clark was extended by Judge Bernthal to 56 days after Defendants' counsel notified Plaintiffs' counsel of the proper successor, representative or other special administrator substitute. Plaintiffs stated that the deadline had not yet begun to run, much less expired.

On May 9, 2011, Defendants' counsel filed a Notice (#44). This Notice stated that, based upon counsel's inquiry of his clients, the remaining defendants in this cause, he "reasonably believe[d] that no representative has or will be appointed for the deceased Defendant, Lonnie Clark." The Notice also stated that Clark's surviving heirs are his spouse, Joan Clark, and two sons, Jeffery L. Clark and Lonnie E. Clark II.

On May 25, 2011, Judge Bernthal entered a Report and Recommendation (#46) which recommended denying the Motion to Dismiss (#36). Judge Bernthal noted that Defendants' counsel had not suggested in the Motion to Dismiss that Plaintiffs have been informed of a proper successor. Judge Bernthal stated that "Rule 25 does not mandate that this Court dismiss the action against Defendant Clark under these circumstances, where Plaintiffs have not been informed of a proper successor."

On June 13, 2011, Defendants filed their Response and Objections to Report and Recommendation (#49). Defendants argued that, as stated in their Notice (#44), no representative has or will be appointed for Clark. Therefore, they argued that they could not possibly know who

the representative is. Defendants argued that the action against Clark "has terminated and is at an end since he no longer exists." On June 30, 2011, Plaintiffs filed a Memorandum of Law in Response to the Objections (#50). Plaintiffs argued that Defendants, and their counsel, do not have standing to seek Clark's dismissal from this action. Plaintiffs also argued that Defendants' counsel has been ordered to notify Plaintiffs' counsel of Clark's "proper successor, representative, or other special administrator" and the claim that Defendants and their counsel do not know the identity of the proper party to substitute strains credulity.

Rule 25(a) "provides that if the claim on which the suit is based survives the death (some claims, such as claims of defamation, die with the claimant), the court may order the substitution of the proper party, ordinarily the personal representative of the party who has died." Atkins v. City of Chicago, 547 F.3d 869, 870 (7th Cir. 2008).[3] The court in Atkins noted that a party to a lawsuit who dies has "ceased, upon his death, to be a party." Atkins, 547 F.3d at 872. The court in Atkins held that a notice of suggestion of death is not effective to start the 90-day clock for substituting the proper party under Rule 25(a) unless it is served on the litigants and "nonparties with a significant financial interest in the case, namely the decedent's successors . . . or personal representative." Atkins, 547 F.3d at 873. The court also stated that "the cases are unequivocal that an obviously interested party [such as the spouse of the decedent] must be served for the 90-day clock to start running." Atkins, 547 F.3d at 873.

In this case, Defendants' counsel did not serve either of the notices regarding Clark's death on Clark's spouse or sons. This court therefore agrees with Judge Bernthal's conclusion that the 90-

---

[3] This court notes that no one has suggested that Plaintiffs' action against Clark has been extinguished by his death.

day clock has not started running and there is no basis for granting Clark's motion to dismiss. This court therefore accepts the Report and Recommendation (#46) and concludes that the Motion to Dismiss (#36) must be denied.

This does leave things in a rather uncertain posture, however, since Defendants' counsel has indicated that he reasonably believes "that no representative has or will be appointed for the deceased Defendant, Lonnie Clark." If Plaintiffs wait to be informed of the proper successor or representative for Clark, it appears they could be waiting a very long time and the portion of this case related to the claim against Clark would remain open and unresolved a very long time as well.

This court notes that, generally, the proper party for substitution is the person who has the legal right and authority to defend against the claims brought against the deceased party. See Fariss v. Lynchburg Foundry, 769 F.2d 958, 962 (4th Cir. 1985). Rule 25(a) recognizes that the proper party usually will be the representative of the decedent's estate who has been appointed under state law. The rule also uses the word "successor," which indicates that a person may be substituted as a party even though the person has not been formally appointed as a representative or administrator. See 6 James Wm. Moore et al., *Moore's Federal Practice* § 25.12[3] (Matthew Bender 3d ed. 2010). Defendants have pointed out that Illinois law provides:

> (2) If a person against whom an action has been brought dies and the cause of action survives and is not otherwise barred, his or her personal representative shall be substituted as a party. If no petition has been filed for letters of office for the deceased's estate, the court, upon motion of a person

bringing an action and after the notice to the party's heirs or legatees as the court directs and without opening an estate, may appoint a special representative for the deceased party for the purposes of defending the action. If a party elects to have a special representative appointed under this paragraph (2), the recovery shall be limited to the proceeds of any liability insurance protecting the estate and shall not bar the estate from enforcing any claims that might have been available to it as counterclaims.

If a motion to substitute is not filed within 90 days after the death is suggested of record, the action may be dismissed as to the deceased party.

735 Ill. Comp. Stat. 5/2-1008(b)(2). Defendants appear to be suggesting that Defendant Clark must be dismissed because no motion to substitute was filed within 90 days after Clark's death was suggested of record. However, Rule 25(a) governs the procedure for substitution following a party's death, even where the court must apply state substantive law. <u>Servidone Constr. Corp. v. Levine</u>, 156 F 3d 414, 416 (2d Cir. 1998). This court has already concluded that the 90 day time period set out in Rule 25(a) has not begun to run. This court also agrees with Plaintiffs that Defendants' counsel has been ordered to notify Plaintiffs' counsel of the proper successor, representative or other special administrator to substitute. This court therefore concludes that Defendants' counsel must make every attempt to expeditiously determine the proper successor or representative to substitute in this case. However, if this information is not provided, Plaintiffs' counsel also must make an

effort to determine the proper successor or representative so that a motion for substitution of parties can be made as soon as possible and this case can be finally resolved.

## II. MOTIONS FOR SUMMARY JUDGMENT

### A. STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). In ruling on a motion for summary judgment, a district court "has one task and one task only: to decide, based upon the evidence of record, whether there is any material dispute of fact that requires a trial." Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 920 (7th Cir. 1994). In making this determination, the court must construe the evidence in the light most favorable to the nonmoving party and draw all reasonable inferences in favor of that party. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Burwell v. Pekin Cmty. High Sch. Dist. 303, 213 F. Supp. 2d 917, 929 (C.D. Ill. 2002). However, the nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists and "must come forward with specific facts demonstrating that there is a genuine issue for trial." Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir. 2008); see also Anderson, 477 U.S. at 251-52.

### B. PLAINTIFFS' MOTION

As noted previously, Plaintiffs are seeking summary judgment as to claims 1 - 5 and 7 - 17 listed in their Complaint.

### 1. DEFENDANT CLARK

Defendants' counsel filed an Objection to Plaintiffs' Motion for Summary Judgment Against

Defendant, Lonnie Clark, Deceased (#39). He argued that Plaintiffs are not entitled to proceed against Clark until such time as a proper party has been duly substituted for him. This court agrees. No ruling can be made regarding Defendant Clark until the procedure has been followed to substitute a successor or representative to defend the action.

## 2. DEFENDANT PIRTLE

In his Response to Plaintiffs' Motion for Summary Judgment (#40), Defendant Pirtle did not respond to Plaintiffs' Statement of Undisputed Facts. Instead, Pirtle argued that there is no genuine issue as to any material fact with respect to his "personal liability." Pirtle made the same argument he made in his own Motion for Summary Judgment, that there is no basis for piercing P & C's corporate veil and imposing liability on him for any copyright infringement.[4] This court agrees with Plaintiffs that this argument clearly misses the mark.

Section 106(4) of the Copyright Act provides that the owner of a copyright has the exclusive rights to do and to authorize the public performance of musical works. 17 U.S.C. § 106(4); Broadcast Music, Inc. v. CDZ, Inc., 724 F. Supp. 2d 930, 934 (C.D. Ill. 2010). "To take advantage of their rights under this law, performing rights societies such as ASCAP were formed to negotiate contracts with radio stations, bars, nightclubs and similar establishments so that operators of such establishments would not have to negotiate individual agreements with every composer whose songs they intend to play." Major Bob Music v. Heiman, 2010 WL 1904341, at *3 (W.D. Wis. 2010); see also Broadcast Music, Inc. v. Star Amusements, Inc., 44 F.3d 485, 486 (7th Cir. 1995); Chi-Boy Music v. Charlie Club, Inc., 930 F.2d 1224, 1226 n.1 (7th Cir. 1991). Under contracts with ASCAP or similar organizations, operators must pay licensing fees to copyright holders for the right to play

---

[4] Pirtle attached a copy of his unsigned, undated and unnotarized affidavit.

copyrighted music for the public.  Broadcast Music, Inc., 44 F.3d at 486; Major Bob Music, 2010 WL 1904341, at *3.  "When such entities fail or refuse to obtain a license from ASCAP but nevertheless perform or play copyrighted material, their acts constitute an infringement upon the copyright interests of the members of the organization."  Gnat Booty Music v. Creative Catering of Wadhams, LLC, 761 F. Supp. 2d 604, 607 (E.D. Mich. 2011).

"A plaintiff claiming copyright infringement must establish two elements: '(1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original.'"  Janky v. Lake County Convention & Visitors Bureau, 576 F.3d 356, 361 (7th Cir. 2009), quoting Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 361 (1991); see also CDZ, Inc., 724 F. Supp. 2d at 934.  Copying of an original work occurs when one publicly performs the work without the copyright owner's authorization.  Janky, 576 F.3d at 361; CDZ, Inc., 724 F. Supp. 2d at 934.  The law is settled that a radio broadcast constitutes a "performance" within the meaning and coverage of copyright law.  Twentieth Century Music Corp. v. Aiken, 422 U.S. 151, 161 (1975) ("Broadcasters perform."); Simpleville Music v. Mizell, 451 F. Supp. 2d 1293, 1296 (M.D. Ala. 2006); see also Joelsongs v. Shelley Broadcasting Co., 491 F. Supp. 2d 1080, 1083 (M.D. Ala. 2007); Jobete Music Co. v. Johnson Commc'ns, 285 F. Supp. 2d 1077, 1082-83 (S.D. Ohio 2003).

Pirtle has not challenged any of the facts set out by Plaintiffs to establish the elements of an action for copyright infringement.  Pirtle has not disputed that Plaintiffs own valid copyrights in the songs played on WBCP and that WBCP played the songs without Plaintiffs' authorization.  Pirtle has only claimed that he cannot be personally liable for the infringement because there is no basis for piercing the corporate veil of P & C.  The cases cited by Pirtle are distinguishable and do not support his argument that he is not personally liable for copyright infringement in this case.  See,

e.g., Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec, 529 F.3d 371, 378-79 (7th Cir. 2008) (no basis to pierce corporate veil to make officers of corporation liable for default judgment for breach of contract entered against corporation); Source One Global Partners, LLC v. KGK Synergize, Inc., 2009 WL 2192791, at *6-7 (N.D. Ill. 2009) (the plaintiff failed to make plausible allegations that the president of corporation engaged in patent infringement).

This court concludes that Pirtle's claim that there is no basis for piercing the corporate veil is irrelevant in this copyright infringement action. Vicarious liability may be imposed for copyright infringement even if the evidence is not sufficient to pierce the corporate veil. See Gary Friedrich Enters., LLC v. Marvel Enters., Inc., 2011 WL 1142916, at *7 (S.D.N.Y. 2011); The Rottlund Co. v. Wensmann Homes, Inc., 2003 WL 21517362, at *3 (D. Minn. 2003); see also In re Napster Copyright Litig., 2006 WL 1348555, at *3 (N.D. Cal. 2006) ("degree of control required for vicarious liability is less than that required to pierce the corporate veil").

A defendant can be held vicariously liable for copyright infringement where he: (1) profits directly from the infringement, and (2) has a right and ability to supervise the direct infringer. CDZ, Inc., 724 F. Supp. 2d at 935, citing Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd., 545 U.S. 913, 931 n.9 (2005). It is well settled that vicarious liability can be imposed even if the defendant initially lacks knowledge of the infringement. Metro-Goldwyn-Mayer Studios, Inc., 545 U.S. at 931 n.9; CDZ, Inc., 724 F. Supp. 2d at 935. Liability for copyright infringement may be imposed on individuals who "have the right and ability to supervise the infringing activity and have a financial interest in the exploitation of copyrighted materials." Jobete Music Co., 285 F. Supp. 2d at 1083-84.

This court agrees with Plaintiffs that the uncontroverted evidence in this case shows that Pirtle had the right and ability to control the infringing activity of WBCP as well as a direct financial

interest in that activity.[5]  Based upon Pirtle's deposition testimony and Britten's deposition testimony, it is clear that Pirtle determined the programming format of WBCP and had the right and ability to control the programming at WBCP.  Pirtle also supervised and controlled the employees who put the programming on the air.  In addition, Pirtle had a clear financial interest in the activities of P & C and WBCP.  Pirtle was entitled to one half of any profits made by P & C and P & C paid rent to Pirtle, which Pirtle reported as income on his personal tax return.  In addition, Pirtle testified that P & C owes him "probably 25, 000" dollars.

Therefore, Plaintiffs have shown that Pirtle is vicariously liable for each of the 16 acts of copyright infringement that occurred on May 8 and 9, 2008 and January 26 and 27, 2009.  See CDZ, Inc., 724 F. Supp. 2d at 936-37; Major Bob Music, 2010 WL 1904341, at *3; Jobete Music Co., 285 F. Supp. 2d at 1084.  Plaintiffs' Motion for Summary Judgment is granted as to Defendant Pirtle.

### 3.  DEFENDANT P& C

In its Objections to Summary Judgment and Motion to Strike Plaintiffs' Motion for Summary Judgment and Attached Affidavits 3, 4, 5, 6, 7, 8 and II (#45), Defendant P & C did not dispute any of the Undisputed Material Facts listed by Plaintiffs.  Instead, P & C argued only that the affidavits Plaintiffs attached to their Motion for Summary Judgment are defective and do not comply with Rule 56 of the Federal Rules of Civil Procedure.  P & C argued that the challenged affidavits failed to state that the matters asserted were based on the personal knowledge of the affiant, failed to show that the affiant would be competent to testify as to the matters asserted in the affidavit, and included

---

[5]  This court notes that this court has not considered any contrary statement included in Pirtle's unsigned, undated and unnotarized affidavit.  It is well settled that a "plaintiff cannot defeat a motion for summary judgment by 'contradict[ing] deposition testimony with later-filed contradictory affidavits.'"  LaFary v. Rogers Group, Inc., 591 F.3d 903, 908 (7th Cir. 2010), quoting Ineichen v. Ameritech, 410 F.3d 956, 963 (7th Cir. 2005).

inadmissible hearsay and conclusions of law and facts. P & C also complained that the attachments to the affidavit of Steven Reynolds were not "sworn to or certified." In addition, P & C complained that some of the affiants were not disclosed as witnesses by Plaintiffs prior to the discovery deadline and that none of the affiants were disclosed as expert witnesses. P & C did not cite any case law authority in support of its bare-bones arguments.

In contrast, Plaintiffs filed a lengthy Memorandum in Response (#42), with attached exhibits, and carefully discussed, with citations to relevant case law, the sufficiency of the affidavits they provided in support of their Motion for Summary Judgment.

Rule 56 provides that "[a]n affidavit or declaration used to support or oppose a motion [for summary judgment] must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4).[6] This court has carefully reviewed the affidavits provided by Plaintiffs and concludes that they are adequate to comply with Rule 56(c)(4). This court agrees with Plaintiffs that, with the exception of the Reynolds affidavit, which provided this court with copies of exhibits that have been separately authenticated, each affiant expressly states that his or her testimony is based upon personal knowledge and explains the basis for that knowledge. This court further agrees that P & C has no basis for challenging the documents attached to Reynolds' affidavit. Reynolds, an attorney of record in this case, is fully competent to provide the court with exhibits. Two of the challenged exhibits are transcripts of depositions and P & C's counsel was present when the depositions were taken. The depositions were also certified by the court reporter, and this court

---

[6] Rule 56 was amended, effective December 1, 2010. This court notes that P & C cited to and quoted the previous version of Rule 56.

agrees with Plaintiffs that P & C's challenge to the deposition transcripts is frivolous and borders on bad faith. See Fenje v. Feld, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003), aff'd 398 F.3d 620 (7th Cir. 2005) (opposing party not acting in good faith in raising an objection to a document the party knows is authentic). The other exhibits are affidavits, documents provided by Defendants in discovery, discovery responses, public court records and documents Pirtle identified during his deposition. This court concludes there is no legitimate basis for questioning the authenticity of any of these documents. Moreover, the language P & C relied on in making this challenge has been omitted from the current version of Rule 56. "The requirement that a sworn or certified copy of a paper referred to in an affidavit or declaration be attached to the affidavit or declaration is omitted as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record." Fed. R. Civ. P. 56, Committee Notes, 2010 Amendments.

This court further agrees with Plaintiffs that there is no basis to strike any of the affidavits based upon a discovery violation. This court agrees with Plaintiffs that all but two of the affiants were disclosed prior to the discovery deadline. The two remaining affiants were disclosed more than one month prior to the filing of the Motion for Summary Judgment. It appears the post-deadline disclosures were justified. Plaintiffs stated that Richard H. Reimer, in-house counsel for ASCAP, was disclosed because an ASCAP paralegal left ASCAP's employ and Robert A. Wexler was disclosed shortly after being identified as one of six individuals who would testify regarding the chain of custody of the recordings made of WBCP's broadcasts. In any case, this court agrees with Plaintiffs that P & C cannot show that it suffered any prejudice because Defendants did not seek to depose any individuals disclosed by Plaintiffs in this case.

In addition, this court agrees with Plaintiffs that none of the affidavits contain expert

testimony so there was no need for Plaintiffs to disclose expert witnesses in this case. The only affidavit which arguably contains opinions is the affidavit of Kuzyszyn. However, his recognition of the songs performed in the recordings contained on the compact discs is based upon his direct factual observation of the songs through hearing and memory recognition. Therefore, at most, his affidavit contained lay opinions based upon his own first-hand knowledge. See Payne v. Pauley, 337 F.3d 767, 772 (7th Cir. 2003) (personal knowledge may include reasonable inferences grounded in observation or other first hand experience); see also Big Hat Brooks v. Prosecutors, 565 F. Supp. 2d 981, 986 n.4 (S.D. Ind. 2008) (pursuant to Rule 701 of the Federal Rules of Evidence, lay opinion testimony that is "rationally based on the perception of the witness" is allowable in support of a motion for summary judgment). This court further notes that other courts have accepted an affidavit from Kuzysyzn as support for a claim of copyright infringement. See Joelsongs, 491 F. Supp. 2d 1080, 1083 (M.D. Ala. 2007); Simpleville Music, 451 F. Supp. 2d at 1296; Jobete Music Co., 285 F. Supp. 2d at 1082-83. In addition, the court in Varry White Music v. Banana Joe's of Akron, Inc., 65 U.S.P.Q.2d 1855, 1859 (N.D. Ohio 2002) rejected a challenge to an affidavit essentially identical to Kuzysyzn's affidavit, finding that it plainly established the affiant's competency and personal knowledge.

P & C's challenge to the affidavits filed in support of Plaintiffs' Motion for Summary Judgment, which this court has found without merit, is its only response to the Motion. Therefore, because P & C has not provided a response to any of the facts set out by Plaintiffs, this court may properly deem them admitted. See Waldridge, 24 F.3d at 922; Munyon v. Henson, 2010 WL 480881, at *2 (C.D. Ill. 2010).

The facts set out by Plaintiffs are clearly sufficient to show that P & C is liable for copyright

infringement. The facts show that P & C owns and operates WBCP and that WBCP broadcast copyrighted music without authorization. P & C does not maintain any record or log, or any other document, detailing the programming on WBCP. Therefore, P & C cannot contradict the evidence that 16 copyrighted songs were played on May 8 and 9, 2008 and January 26 and 27, 2009. P & C also has not contradicted the evidence that the songs were played after its license with ASCAP was terminated for failure to pay the required fees. Plaintiffs also provided ample documentation to show that they are the owners of valid copyrights in these songs. This court notes that the copyright certificates provided by Plaintiffs are prima facie evidence establishing their ownership of the copyrights. See Jobete Music Co., 285 F. Supp. 2d at 1082; Varry White Music, 65 U.S.P.Q.2d at 1858.

Based upon the undisputed facts provided by Plaintiffs, this court concludes that Plaintiffs are entitled to summary judgment against Defendant P & C.

### 4. RELIEF AWARDED

This court must now determine the relief Plaintiffs are entitled to from Pirtle and P & C.

### 1. STATUTORY DAMAGES

Plaintiffs have requested statutory damages. Section 504(c)(1) of the Copyright Act provides that "the copyright owner may elect, at any time before final judgment is rendered, to recover, instead of actual damages and profits, an award of statutory damages for all infringements involved in the action, with respect to any one work, for which any one infringer is liable individually, or for which any two or more infringers are liable jointly and severally, in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). Section 504(c)(2) provides that where the infringement is proven to have been committed willfully, the court may increase the

award of statutory damages to not more than $150,000. 17 U.S.C. § 504(c)(2). Alternatively, if the court finds that the infringement was committed by an infringer who was not aware and had no reason to believe that its acts constituted copyright infringement, the court may reduce the award of statutory damages to a sum of not less than $200. 17 U.S.C. § 504(c)(2); <u>see also</u> <u>CDZ, Inc.</u>, 724 F. Supp. 2d at 937.

In determining an appropriate amount of damages, this court can consider various factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent to future copyright infringement." <u>Chi-Boy Music</u>, 930 F.2d at 1229; <u>Major Bob Music</u>, 2010 WL 1904341, at *4. When the infringement is willful, the statutory damages award may be designed to penalize the infringer and to deter future violations. <u>Chi-Boy Music</u>, 930 F.2d at 1229-30; <u>Major Bob Music</u>, 2010 WL 1904341, at *4.

This court agrees with Plaintiffs that the infringement in this case was willful. Defendants had twice before been sued for copyright infringement. The first lawsuit concluded with P & C entering into a consent judgment with Pirtle and Clark signing tolling agreements subject to the full amount of the judgment being paid. The second lawsuit ended with a consent judgment against Clark, Pirtle and P & C. Obviously, Pirtle and P & C were aware of the consequences of copyright infringement. The record also shows that, prior to this lawsuit, ASCAP repeatedly notified Defendants that failure to pay licensing fees would result in the termination of their license. Once the license was terminated for failure to pay the fees, Defendants were notified that broadcasting music in the ASCAP repertory would be infringing the copyrights of ASCAP's members. This court finds that all of these facts show that Defendants were on notice of their need to obtain a license to prevent copyright infringement at the radio station. <u>See</u> <u>CDZ, Inc.</u>, 724 F. Supp. 2d at 938-39.

"[E]vidence that notice has been accorded to the alleged infringer before the specific acts found to have constituted infringement occurred is perhaps the most persuasive evidence of willfulness." Chi-Boy Music, 930 F.2d at 1227, Major Bob Music, 2010 WL 1904341, at * 4.

Despite this notice, Defendants made absolutely no efforts to keep WBCP from playing music in ASCAP's repertory. This court finds that Defendants acted willfully in violating Plaintiffs' rights. See CDZ, Inc., 724 F. Supp. 2d at 939.

Plaintiffs have requested an award of statutory damages in the amount of $5,000 for each of the 16 instances of copyright infringement, for a total award of $80,000. As noted, Del Bove, Radio Accounts Manager for ASCAP, estimated that if WBCP had been properly licensed by ASCAP to date, license fees owed would total approximately $15,000, including late payment charges of approximately $3,100.

Because the statutory damages rule is designed to deter wrongful conduct, courts have routinely ordered damages well in excess of, and typically around three times the amount the defendant would have paid if the defendant had properly obtained a license. Broadcast Music, Inc. v. Pub Dayton, LLC, 2011 WL 2118228, at * 4 (S.D. Ohio 2011); Gnat Booty Music, 761 F. Supp. 2d at 609; see also Major Bob Music, 2010 WL 1904341, at *4. The Seventh Circuit has upheld this approach. See Chi-Boy Music, 930 F.2d at 1229. The reasoning behind the de facto treble damages award "is to put defendants 'on notice that it costs less to obey the copyright laws than to violate them.'" Pub Dayton, LLC, 2011 WL 2118228, at * 4, quoting Sailor Music v. IML Corp., 867 F. Supp. 565, 570 n.8 (E.D. Mich. 1994). This court therefore concludes that a proper award of statutory damages in this case is $48,000, or $3,000 for each of the 16 instances of copyright infringement. This court recognizes that this is less than Plaintiffs have requested. However, it is

slightly more than three times the estimated license fees which would have been owed by Defendants and this court concludes that this award satisfies the compensatory and deterrent goals of the Copyright Act.  See Jobete Music Co., 285 F. Supp. 2d at 1091-92.

## 2. INJUNCTION

Plaintiffs have also requested permanent injunctive relief against Defendants.  Section 502(a) of the Copyright Act provides that "[a]ny court having jurisdiction of a civil action arising under this title may . . . grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a).  "Where there is a 'showing of past infringement and a substantial likelihood of future infringement,' courts have not hesitated to grant permanent injunctions." Gnat Booty Music, 761 F. Supp. 2d at 609, quoting Jobete Music, 285 F. Supp. 2d at 1092.  This court concludes that Plaintiffs have made a clear showing of past infringement in this case and, frankly, not just a substantial likelihood but in actuality almost a certainty of future infringement.  WBCP continues to broadcast music and makes no efforts to ensure that it is not broadcasting copyrighted music without authorization.

However, in considering whether to grant permanent injunctive relief, this court must consider: (1) whether Plaintiffs have suffered or will suffer an irreparable injury; (2) whether there are inadequate remedies at law available to compensate for the injury; (3) the balance of hardships, and (4) the public interest.  Sierra Club v. Franklin County Power of Ill., LLC, 546 F.3d 918, 935 (7th Cir. 2008); CDZ, Inc., 724 F. Supp. 2d at 940.

In considering all of these factors, this court finds that a permanent injunction is appropriate under the circumstances of this case.  This court concludes that the infringement of Plaintiffs' copyrights has caused them to suffer irreparable injury.  See Major Bob Music, 2010 WL 1904341,

at *5 ("unauthorized performances of copyrighted musical compositions take away the copyright owner's ability to control its copyrighted works").  In addition, this court concludes that the remedies at law may not be adequate if Plaintiffs are forced to continually monitor WBCP and litigate further infringements.  See CDZ, Inc., 724 F. Supp. 2d at 940; Major Bob Music, 2010 WL 1904341, at *5.  As far as the balance of hardships, this court concludes that the hardship to Defendants in obtaining an ASCAP license is not great, as they have previously obtained a license from ASCAP.  See CDZ, Inc., 724 F. Supp. 2d at 940.  On the other hand, the hardship to Plaintiffs is much greater as they would have to spend more time and money monitoring WBCP to ensure Defendants do not continue to infringe ASCAP-licensed musical compositions.  See CDZ, Inc., 724 F. Supp. 2d at 940.  In fact, it "is an accepted equitable principle that a court does not have to balance the equities in a case where the defendant's conduct has been willful."  Major Bob Music, 2010 WL 1904341, at *5, quoting Sierra Club, 546 F.3d at 935.  Finally, there is no evidence that the public would be harmed by an injunction requiring Defendants to comply with copyright laws.  See Major Bob Music, 2010 WL 1904341, at *6.  This court concludes that the public interest favors preventing the infringement of valid copyrights.  Therefore, all of the relevant factors favor the imposition of a permanent injunction.  Moreover, given the evidence in the record of Defendants' complete failure to make any attempts to prevent playing music in the ASCAP repertory on WBCP, there is a very real threat of continuing infringement, so permanent injunctive relief is warranted.  See CDZ, Inc., 724 F. Supp. 2d at 940; see also Gnat Booty Music, 761 F. Supp. 2d at 609.

### 3. ATTORNEY'S FEES AND COSTS

Plaintiffs have requested attorney's fees and costs.  Section 505 of the Copyright Act provides that "the court may also award a reasonable attorney's fee to the prevailing party as part

of the costs." 17 U.S.C. § 505.  Attorney's fees may be awarded in order to encourage the assertion of colorable copyright claims, to deter infringement and to make the plaintiff whole.  Roulo v. Russ Berrie & Co., 886 F.2d 931, 942 (7th Cir. 1989).  A finding of willful infringement will support an award of attorney's fees.  Chi-Boy Music, 930 F.2d at 1230; CDZ, Inc., 724 F. Supp. 2d at 939.

This court concludes that Plaintiffs are entitled to their reasonable attorney's fees and costs in litigating this case.  An award of attorney's fees and costs is appropriate in order to deter any further infringement on the part of Defendants, particularly because they have engaged in willful infringement.  See CDZ, Inc., 724 F. Supp. 2d at 940.  Further, attorney's fees are appropriate because Defendants were successfully sued for copyright infringement twice before and have not, in this action, asserted any non-frivolous defenses or provided any explanation for their decision to perform copyrighted songs after their license with ASCAP was terminated.  See Major Bob Music, 2010 WL 1904341, at *7.  In fact, this court concludes that the record in this case supports a finding that Defendants treated the copyright laws with disdain.  See Chi-Boy Music, 930 F.2d at 1230.  Under these circumstances, attorney's fees are an appropriate means of compensating Plaintiffs for enforcing copyright laws and penalizing Defendants for willfully violating the law with no reasonable basis or non-frivolous justification.  See Major Bob Music, 2010 WL 1904341, at *7.

The amount of Plaintiffs' reasonable fees will be determined once Plaintiffs' counsel submits an affidavit setting forth the attorney's fees and costs billed in this case,  Plaintiffs' counsel is allowed 14 days from the date of this order to do so.  Defendants P & C and Pirtle are allowed 14 days to file any objections to the amount of the attorneys' fees requested.

### 4.  POST-JUDGMENT INTEREST

Plaintiffs have also requested post-judgment interest on all amounts awarded, pursuant to

28 U.S.C. § 1961.  This court concludes that Plaintiffs are entitled to post-judgment interest.  See Pub Dayton, LLC, 2011 WL 2118228, at *5.

## C.  PIRTLE'S MOTION

Pirtle's Motion for Summary Judgment in his favor (#38) is based solely on his argument that there is no basis for piercing P & C's corporate veil.  This court has already determined that this argument is irrelevant because, based upon the facts and the applicable case law, Pirtle is vicariously liable for the copyright infringement and Plaintiffs are entitled to summary judgment against Pirtle on their claims.  Accordingly, Pirtle's Motion for Summary Judgment (#38) is DENIED.

IT IS THEREFORE ORDERED THAT:

(1)  Defendant Pirtle's Motion for Summary Judgment (#38) is DENIED.

(2)  Plaintiffs' Motion for Summary Judgment on Causes of Action 1 - 5 and 7 - 17 (#35) is GRANTED.  Judgment is entered in favor of Plaintiffs and against Defendants P & C and Pirtle. Defendants are liable for statutory damages in the amount of $48,000.00.  This court also enters a permanent injunction, pursuant to 17 U.S.C. § 502, prohibiting Defendants P & C and Pirtle and/or their officers, agents, servants, employees, attorneys, heirs, successors, assigns, and other persons who are in active concert or participation with them from publicly performing any and all of the musical compositions in the ASCAP repertory over WBCP or any other station or any other broadcast facility owned or operated by them, unless they shall have obtained permission in advance of the performance from the copyright owners involved or a license from ASCAP, their performing rights society.  Defendants P & C and Pirtle are further ordered to pay Plaintiffs' costs, including attorneys' fees, pursuant to 17 U.S.C. § 505.  Plaintiffs are allowed 14 days to file an affidavit setting out the amount of the attorneys' fees reasonably incurred in this case.  Defendants P & C and

Pirtle are allowed 14 days to file any objections to the amount of the attorneys' fees requested. Defendants P & C and Pirtle are also ordered to pay post-judgment interest on all amounts awarded, pursuant to 28 U.S.C. § 1961.

(3)  This court accepts the Report and Recommendation (#46) filed by Magistrate Judge David G. Bernthal in this case.  Accordingly, the Motion to Dismiss (#36) filed on behalf of Defendant Lonnie E. Clark is DENIED.

(4) All matters have been determined by the court except for a final resolution regarding Plaintiffs' claims against Defendant Clark.  Clark is deceased and no successor or representative has yet been substituted as a party in his place.  Until a successor or representative has been substituted, this court cannot proceed regarding the claims against Defendant Clark.  Accordingly, the final pretrial conference set for August 12, 2011, at 1:30 p.m. and the bench trial set for August 29, 2011, at 9:00 a.m. are hereby VACATED.

ENTERED this 5th day of July, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE