**UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION**

---

| | |
|---|---|
| BERTAM MUSIC CO., FLYTE TYME ) <br> TUNES, EMI APRIL MUSIC INC., SOUP ) <br> SANDWICH MUSIC, GOLD & IRON MUSIC ) <br> PUBLISHING, XM MUSIC, LELLOW ) <br> PRODUCTIONS INC., BOOK OF DANIEL ) <br> MUSIC, EMI VIRGIN MUSIC, INC., MASS ) <br> CONFUSION MUSIC, WB MUSIC CORP., ) <br> 2000 WATTS MUSIC, INC., TONI ROBI ) <br> MUSIC, RODSONGS, JOBETE MUSIC CO., ) <br> INC., BLACK BULL MUSIC, INC., ) <br> CANCELLED LUNCH MUSIC, UNIVERSAL- ) <br> POLYGRAM INTERNATIONAL ) <br> PUBLISHING, INC., DE SWING MOB, INC., ) <br> ACROSS 110TH STREET PUBLISHING, ) <br> AL B. SURE INDUSTRIES, INC., E/A MUSIC, ) <br> INC., MONTY SEWARD PUB., CO., MAKE ) <br> IT BIG MUSIC, BROCKMAN ENTERPRISES,) <br> INC. (LIBREN MUSIC DIVISION), BRENDA ) <br> RICHIE PUBLISHING, and UNCLE ) <br> RONNIE'S MUSIC COMPANY, INC., ) <br> ) <br>     **Plaintiffs,** ) <br>  v. ) <br> ) <br> P & C ENTERPRISES, INC., LONNIE E. ) <br> CLARK, and J.W. PIRTLE, ) <br> ) <br>     **Defendants.** ) | Case No. 09-CV-2253 |

**<u>OPINION</u>**

This case is before the court for ruling on the amount of attorneys' fees to be awarded to Plaintiffs and on Plaintiffs' Motion to Substitute Parties for Deceased Defendant Lonnie E. Clark (#55). Following careful consideration of the arguments of the parties, Plaintiffs are awarded attorneys' fees in the amount of $77,001.25 and costs in the amount of $7,107.99 from Defendants P & C Enterprises, Inc. (P & C) and J.W. Pirtle (Pirtle). In addition, Plaintiffs' Motion to Substitute

Parties (#55) is GRANTED as to Pirtle. A hearing will be held on September 8, 2011, at 3:30 p.m. regarding Joan Clark's Objection to Motion to Substitute Parties (#63).

BACKGROUND

On July 5, 2011, this court entered an Opinion (#51) in this case. This court granted Plaintiffs' Motion for Summary Judgment (#35) and entered judgment in favor of Plaintiffs and against Defendants P & C and Pirtle. This court concluded that the copyright infringement in this case was willful and awarded $48,000 in statutory damages, consisting of $3,000 for each of the 16 instances of copyright infringement, plus post-judgment interest.

This court also concluded that Plaintiffs made a clear showing of past infringement and, frankly, not just a substantial likelihood but in actuality almost a certainty of future infringement. This court noted that WBCP, the radio station controlled by Defendants P & C and Pirtle, continues to broadcast music and makes no efforts to ensure that it is not broadcasting copyrighted music without authorization. In considering all of the relevant factors, this court found that a permanent injunction is appropriate under the circumstances of this case. This court therefore entered a permanent injunction, pursuant to 17 U.S.C. § 502, prohibiting Defendants P & C and Pirtle and/or their officers, agents, servants, employees, attorneys, heirs, successors, assigns, and other persons who are in active concert or participation with them from publicly performing any and all of the musical compositions in the repertory of the American Society of Composers, Authors and Publishers (ASCAP) over WBCP or any other station or any other broadcast facility owned or operated by them, unless they shall have obtained permission in advance of the performance from the copyright owners involved or a license from ASCAP, their performing rights society.

This court also concluded that Plaintiffs are entitled to their reasonable attorneys' fees and

costs in litigating this case pursuant to 17 U.S.C. § 505. This court noted that an award of attorneys' fees and costs is appropriate in order to deter any further infringement on the part of Defendants, particularly because they have engaged in willful infringement. This court further stated that attorneys' fees are appropriate because Defendants were successfully sued for copyright infringement twice before and have not, in this action, asserted any non-frivolous defenses or provided any explanation for their decision to perform copyrighted songs after their license with ASCAP was terminated. This court concluded that, in fact, the record in this case supports a finding that Defendants treated the copyright laws with disdain. This court stated that, "[u]nder these circumstances, attorney's fees are an appropriate means of compensating Plaintiffs for enforcing copyright laws and penalizing Defendants for willfully violating the law with no reasonable basis or non-frivolous justification." This court stated that the amount of Plaintiffs' reasonable fees would be determined once Plaintiffs' counsel submitted an affidavit setting forth the attorneys' fees and costs billed in this case. This court allowed Plaintiffs' counsel 14 days to file an affidavit. This court also allowed Defendants P & C and Pirtle 14 days to file any objections to the amount of the attorneys' fees requested.

This court also denied the Motion to Dismiss (#36) seeking the dismissal of Defendant Lonnie Clark from this action based upon his death on December 10, 2010. In doing so, this court agreed with the conclusion of Magistrate Judge David G. Bernthal in his Report and Recommendation that the 90-day clock set out in Rule 25(a) of the Federal Rules of Civil Procedure had not started running and there was no basis for granting Clark's motion to dismiss. This court determined that, based upon the Seventh Circuit's decision in Atkins v. City of Chicago, 547 F.3d 869, 873 (7th Cir. 2008), a notice of suggestion of death is not effective to start the 90-day clock for

substituting the proper party under Rule 25(a) unless it is served on "nonparties with a significant financial interest in the case, namely the decedent's successors . . . or personal representative." This court noted that the court in Atkins stated that "the cases are unequivocal that an obviously interested party [such as the spouse of the decedent] must be served for the 90-day clock to start running." Atkins, 547 F.3d at 873. This court held that because neither the Suggestion of Death (#30) nor the Notice (#44) filed by Defendants' counsel were served on Clark's spouse or sons, the 90-day clock has not started running. This court therefore accepted the Report and Recommendation (#46) and concluded that the Motion to Dismiss (#36) must be denied. This court then stated:

> This does leave things in a rather uncertain posture, however, since Defendants' counsel has indicated that he reasonably believes "that no representative has or will be appointed for the deceased Defendant, Lonnie Clark."[1] If Plaintiffs wait to be informed of the proper successor or representative for Clark, it appears they could be waiting a very long time and the portion of this case related to the claim against Clark would remain open and unresolved a very long time as well.
>
> This court notes that, generally, the proper party for substitution is the person who has the legal right and authority to defend against the claims brought against the deceased party. See Fariss v. Lynchburg Foundry, 769 F.2d 958, 962 (4th Cir. 1985). Rule

---

[1] Defendants' counsel included this statement in the Notice (#44) he filed which also listed the heirs of Lonnie Clark.

25(a) recognizes that the proper party usually will be the representative of the decedent's estate who has been appointed under state law. The rule also uses the word "successor," which indicates that a person may be substituted as a party even though the person has not been formally appointed as a representative or administrator. See 6 James Wm. Moore et al., *Moore's Federal Practice* § 25.12[3] (Matthew Bender 3d ed. 2010). Defendants have pointed out that Illinois law provides:

> (2) If a person against whom an action has been brought dies and the cause of action survives and is not otherwise barred, his or her personal representative shall be substituted as a party. If no petition has been filed for letters of office for the deceased's estate, the court, upon motion of a person bringing an action and after the notice to the party's heirs or legatees as the court directs and without opening an estate, may appoint a special representative for the deceased party for the purposes of defending the action. If a party elects to have a special representative appointed under this paragraph (2), the recovery shall be limited to the proceeds of any liability insurance protecting the estate and shall

> not bar the estate from enforcing any claims that might have been available to it as counterclaims. If a motion to substitute is not filed within 90 days after the death is suggested of record, the action may be dismissed as to the deceased party.

735 Ill. Comp. Stat. 5/2-1008(b)(2). Defendants appear to be suggesting that Defendant Clark must be dismissed because no motion to substitute was filed within 90 days after Clark's death was suggested of record. However, Rule 25(a) governs the procedure for substitution following a party's death, even where the court must apply state substantive law. <u>Servidone Constr. Corp. v. Levine</u>, 156 F 3d 414, 416 (2nd Cir. 1998). This court has already concluded that the 90 day time period set out in Rule 25(a) has not begun to run. This court also agrees with Plaintiffs that Defendants' counsel has been ordered to notify Plaintiffs' counsel of the proper successor, representative or other special administrator to substitute. This court therefore concludes that Defendants' counsel must make every attempt to expeditiously determine the proper successor or representative to substitute in this case. However, if this information is not provided, Plaintiffs' counsel also must make an effort to determine the proper successor or representative so that a motion for substitution of parties can be made as soon as possible and this case

can be finally resolved.

## ANALYSIS

### I. MOTION TO SUBSTITUTE PARTIES

On August 4, 2011, Plaintiffs filed their Motion to Substitute Parties for Deceased Defendant Lonnie E. Clark (#55) and a Memorandum of Law in Support (#56). Plaintiffs stated that Defendants' counsel had not complied with the court's order to notify Plaintiffs' counsel of the proper successor, representative or other special administrator to substitute. Plaintiffs stated that, therefore, they filed their Motion in an effort to comply with the court's direction in the Opinion. Plaintiffs noted that, in McSurely v. McClellan, 753 F.2d 88, 97-98 (D.C. Cir. 1985), the court concluded that it was proper to substitute the surviving spouses of two decedents and refused to require the plaintiffs to institute proceedings to name representatives of the estate. The court stated that the "distributee of a distributed estate is a 'proper party' for substitution under Rule 25(a)(1)." McSurely, 753 F.2d at 99; see also Hardy v. Kaszycki & Sons Contractors, Inc., 842 F. Supp. 713, 716-17 (S.D.N.Y. 1993); Gronowicz v. Leonard, 109 F.R.D. 624, 626 (S.D.N.Y. 1986). Plaintiffs noted that the Notice (#44) filed by Defendants' counsel stated that Clark's "heirs surviving him were Joan Clark (spouse), Urbana, Illinois; Jeffery L. Clark (son), Savoy, Illinois; and Lonnie E. Clark, II, (son), Urbana, Illinois." Plaintiffs further stated that Defendant's counsel had notified Plaintiffs that Pirtle acquired 100% of the stock of P & C following Clark's death. Plaintiffs also stated that, approximately four months prior to Clark's death, while he was gravely ill, Clark and his wife, Joan Clark, transferred title to the property owned by them to Joan Clark. Plaintiffs argued that this evidence shows that Pirtle and Joan Clark are distributees of Clark's estate and are proper parties to be substituted for Clark. Plaintiffs asked this court to enter an order substituting Pirtle and

7

Joan Clark for Defendant Lonnie E. Clark in this action.

Plaintiffs stated that they served copies of their Motion and Memorandum on Defendants' counsel, Joan Clark, Jeffery L. Clark and Lonnie E. Clark, II. Plaintiffs stated that "[i]f this motion is opposed by the non-parties listed . . . , Plaintiffs request that this Court set a hearing on this matter on or after September 2, 2011."

On August 22, 2011, Defendants' counsel filed a Response and Objections to Appointment of J.W. Pirtle as Substitute Defendant for Lonnie Clark, Deceased (#62). Defendants' counsel, on behalf of Pirtle, did not contest any of the facts set out by Plaintiffs or try to distinguish any of the case law cited by Plaintiffs. Instead, amazingly, Defendants' counsel argued that no substitution can be made because Plaintiffs' motion is untimely. Defendants' counsel acknowledged that Judge Bernthal had extended the time for Plaintiffs to substitute a party for Clark to "56 days after Defendants' counsel notified Plaintiffs' counsel of the proper successor, representative or other special administrator substitute." Defendants' counsel argued that the 56 days began running when the Notice (#44) was filed on May 9, 2011, and had expired prior to the date Plaintiffs' Motion to Substitute Parties (#55) was filed on August 4, 2011.

This court is not sure if Defendants' counsel has chosen not to read this court's Opinion (#51) or has just stubbornly refused to accept it. In any case, this court made clear that both Judge Bernthal and this court concluded that the time for substituting parties had not begun to run. This court reached this conclusion because neither the Suggestion of Death nor the Notice filed by Defendants' counsel were served on Clark's spouse and sons, as required. This court clearly concluded in its Opinion that the Notice (#44) did not start the time allowed for substituting a party. This court also advised Defendants' counsel to "make every attempt to expeditiously determine the

8

proper successor or representative to substitute in this case." This has not been done. In addition, this court stated that, if Defendants' counsel did not provide the information, Plaintiffs' counsel should make an effort to determine the proper successor or representative so that a motion for substitution of parties could be made as soon as possible and this case could be finally resolved. That is exactly what Plaintiffs' counsel has done in this case.

The objection filed by Defendants' counsel on behalf of Pirtle requires no further discussion. Plaintiffs' Motion to Substitute Parties for Lonnie E. Clark (#55) is GRANTED as to J.W. Pirtle. Pirtle is hereby substituted for Lonnie Clark as Lonnie Clark's successor. Plaintiffs are allowed 30 days to file a motion seeking judgment against Pirtle as successor of Lonnie Clark.[2]

On August 23, 2011, Joan Clark, Jeffery L. Clark and Lonnie E. Clark II, through counsel, filed an Objection to Motion to Substitute Parties (#63). Plaintiffs requested that this court set a hearing if these nonparties filed an Objection to the substitution of Joan Clark for Defendant Lonnie Clark. Accordingly, this case is set for a hearing on September 8, 2011, at 3:30 p.m., regarding the Objection (#63).

## II. ATTORNEYS' FEES

As noted, this court concluded in its Opinion (#51) that Plaintiffs were entitled to recover their attorneys' fees from Defendants P & C and Pirtle. The only issue is the amount of fees to be awarded based upon the circumstances of this case. On July 19, 2011, Plaintiffs' counsel, Steven J. Reynolds, filed his Affidavit in Support of Plaintiffs' Application for Fees and Costs (#53). Reynolds stated that he had maintained a daily record of time and services rendered on behalf of

---

[2] This court notes that if Defendants' counsel responds to this motion with yet another challenge to the timeliness of the substitution, this court will consider the imposition of sanctions.

Plaintiffs associated with litigating this case. Reynolds provided a summary of that information which showed that: Reynolds spent 232.2 hours on the case and billed at an hourly rate of $350.00 until January 1, 2011, and an hourly rate of $365.00 after January 1, 2011, for a total of $82,786.50; Monica L. Thompson spent 6.6 hours on the case and billed at an hourly rate of $450.00 for a total of $2,9970.00; Renee M. Schoenberg spent 0.8 hours on the case and billed at an hourly rate of $585.00 for a total of $468.00; and Patricia A. Merryweather spent 1.8 hours on the case and billed at an hourly rate of $175.00 for a total of $315.00. The total attorneys' fees sought were $86,539.50. Reynolds also stated that Plaintiffs' costs totaled $9,447.32. Reynolds attached detailed billing records which included descriptions of the work undertaken and completed by attorneys and paralegals for Plaintiffs as well as notes regarding the proceedings and the necessity of the work performed. Reynolds also attached a detailed list of the costs incurred in this action.

In his Affidavit, Reynolds stated that, as to the reasonableness of the hourly rates, he has been practicing law since 2007, specializing in intellectual property litigation, and is a member of the General Bar of the United States District Courts for the Northern, Central and Southern Districts of Illinois and of the Seventh Circuit Court of Appeals. Reynolds stated that his work in connection with this case is supervised by Thompson, who is a partner in the law firm DLA Piper US (LLP) and is a trial lawyer specializing in intellectual property litigation. Reynolds stated that he also consulted with Schoenberg, an attorney in the firm who specializes in estate planning and probate, on issues regarding seeking substitution for Clark. Reynolds stated that Plaintiffs are not seeking fees for the time he spent conferring with Thompson about legal and strategic issues in this matter or the time spent by Thompson supervising his work and the overall strategy of this litigation. Reynolds further stated that Plaintiffs are not seeking fees associated with the work of Richard H.

Reimer, in-house counsel for ASCAP, who spent a substantial amount of time conducting legal research and drafting and editing documents filed in this case. Reynolds also stated that it is "important to note that a significant portion of the fees incurred by Plaintiffs in this action resulted from Defendants' delays in complying with the discovery process, the unavailability of defense counsel during time-sensitive discovery disputes, and the undeveloped and generalized motions, and responses to motions, filed by Defendants." Reynolds stated:

> I respectfully submit that an award to Plaintiffs of their costs in the amount of $9,447.32 and attorneys' fees in the amount of $86,539.50 for services is reasonable for work including, but not limited to, meeting and conferring with defense counsel in connection with numerous discovery disputes; reviewing and producing documents and a privilege log; conducting legal research; drafting and reviewing briefs/responses related to multiple motions to compel, motions to dismiss/strike, and multiple summary judgment motions and responses; and participating in Court hearings (via telephone).

On August 2, 2011, Defendants Pirtle and P & C filed a document entitled "Second Objections to Request for Attorneys Fees and Costs by Plaintiffs' Attorney" (#54). Defendants argued that an award of nearly $100,000 in attorneys' fees and costs would constitute a "windfall" in light of the large judgment resulting in substantial profits to Plaintiffs. Defendants explained that the $48,000 in damages awarded was significantly greater than what Plaintiffs would have received had Defendants continued to pay the fee of approximately $250.00 per month for a license to air the copyrighted compositions. Defendants also stated that they did not realize any profits from the

11

airing of copyrighted material. Defendants also argued that some of the hours of attorneys' fees requested were excessive, redundant or unnecessary and that the hourly rates requested are "excessive" and "not the usual and customary rate for services performed in this community." Defendants also argued that attorneys' fees pertaining to the claim against Clark are not recoverable as no judgment was entered against Clark. Defendants further argued that Plaintiffs were seeking recovery of costs which are not recoverable under 28 U.S.C. § 1920. Defendants attached documentation which they had included with their response to a prior request for attorneys' fees filed by Plaintiffs.

On August 5, 2011, this court granted Plaintiffs' Motion to File a Reply (#57) and allowed Plaintiffs until August 19, 2011, to file their Reply. On August 19, 2011, Plaintiffs filed a Reply Memorandum in Support of Plaintiffs' Application for Fees and Costs (#61). Plaintiffs argued that Defendants' contention that an award of substantial fees would be a "windfall" to Plaintiffs is entirely without merit and directly contravenes principles embodied in the federal copyright statute. Plaintiffs cited a recent decision of the First Circuit Court of Appeals where the court stated that "[a]ttorneys' fees are made available to prevailing parties in copyright cases in order to 'vindicat[e] the overriding purpose of the Copyright Act: to encourage the production of original literary, artistic, and musical expression for the public good.'" Spooner v. EEN, Inc., 644 F.3d 62, 69 (1st Cir. 2011), quoting Mag Jewelry Co. v. Cherokee, Inc., 496 F.3d 108, 122 (1st Cir. 2007). The court in Spooner affirmed an award of $98,745.80 in attorneys' fees even though the plaintiff only obtained an award of statutory damages from the defendants in the amount of $10,000.00. Spooner, 644 F.3d at 68-69. Plaintiffs pointed out that the Seventh Circuit has held that attorneys' fees should be awarded when the damages award is small because willful infringement involving small amounts of money cannot

be adequately deterred without an award of attorney's fees. See Gonzalez v. Transfer Techs., Inc., 301 F.3d 608, 609-10 (7th Cir. 2002). Plaintiffs pointed out that they incurred in excess of $86,539.50 in attorneys' fees and $9,447.32 in costs in obtaining damages from Pirtle and P & C of $48,000. They argued that denying them the full amount of their fees would result not only in a complete offset of their potential recovery but saddle Plaintiffs with just under $48,000.00 in attorneys' fees and costs.

Plaintiffs also argued that the hourly rates charged in this case are reasonable, noting that the "attorney's actual billing rate for comparable work is presumptively appropriate to use as the market rate." See People Who Care v. Rockford Bd. of Educ., 90 F.3d 1307, 1310 (7th Cir. 1996). Plaintiffs stated that the hourly rates requested in this case are at or below the rate the attorneys normally bill for comparative work. Plaintiffs stated that, additionally, "all attorneys billed at rates that are reasonable for the applicable community; Chicago, Illinois, is the nearest community to central Illinois in which the Intellectual Property bar is sufficiently established to handle copyright matters pending in central Illinois, and the rates of Plaintiffs' attorneys are reasonable in Chicago." Plaintiffs further argued that the total amount sought, $86,539.50, is reasonable for a matter such as this pending in federal court.[3] Plaintiffs also presented additional, persuasive arguments regarding why the hours spent by attorneys on this case were not excessive, redundant, or unreasonable. Plaintiffs also argued that 28 U.S.C. § 1920 does not apply to their request for costs as they are seeking the "recovery of full costs" pursuant to 17 U.S.C. § 505.

---

[3] This court notes that Defendants have gotten something of a break because Plaintiffs are only requesting attorneys' fees for the period beginning on February 24, 2010, when Reynolds became involved in the case, and are not seeking attorneys' fees for the period from October 13, 2009, when their lengthy, detailed Complaint (#1) was filed, until February 24, 2010.

Plaintiffs attached an affidavit from Reynolds which stated that "[a]ll attorneys for whom Plaintiffs' seek fees in this case applied a rate that is at or below the rate at which they normally bill for comparable work on copyright matters." Plaintiffs also attached the affidavit of Brian J. Meginnes, a partner with the law firm Elias, Meginnes, Riffle & Seghetti, PC., who has been practicing law since 1978. Meginnes stated that the hourly rates sought by Plaintiffs are at or below the normal rate and "are reasonable given the expertise necessary to litigate copyright matters . . . before federal courts in central Illinois." Meginnes also stated that the total amount of attorneys' fees sought in this case was reasonable for a matter pending in federal court, based upon the history of the case.

This court agrees with Plaintiffs' arguments. Defendants could have easily avoided the judgment of $48,000 and an award of substantial attorneys' fees by paying approximately $250.00 a month in license fees. Instead, Defendants treated the copyright laws with disdain, even though they knew the consequences, having been sued for copyright infringement on two prior occasions. Plaintiffs were required to sue Defendants for copyright infringement for yet a third time and are entitled to the attorneys' fees and costs they incurred in pursuing the meritorious action in this case. See Gonzalez, 301 F.3d at 609-10; see also Spooner, 644 F.3d at 68-69. This court has carefully reviewed the documentation provided by Plaintiffs and concludes that the attorneys' fees and costs requested are thoroughly documented and were necessary in this litigation. This court notes that it agrees with Plaintiffs that Defendants have to be considered responsible for increasing substantially the number of hours Plaintiffs' attorneys were required to work in this case by unnecessarily

prolonging and complicating discovery[4] and by raising completely frivolous arguments which, nevertheless, required responses. This court also finds unpersuasive Defendants' argument that the hourly rates charged by Plaintiffs' attorneys are excessive.[5] In exercising its discretion to award attorneys' fees to a prevailing party under the Copyright Act, a court may consider such factors as "frivolousness, motivation, objective unreasonableness (both in the factual and legal components of the case) and the need in particular circumstances to advance consideration of compensation and deterrence." Gonzalez, 301 F.3d at 609, quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 535 n.19 (1994). This court concludes that all of the relevant factors favor awarding Plaintiffs their attorneys' fees in this case.

This court must agree with Defendants, however, that Defendants Pirtle and P & C should not be required to pay the attorneys' fees and costs which were related solely to the claim against Defendant Clark. Defendants, however, did not make an attempt to calculate the amount of attorneys' fees and costs related solely to the claim against Clark. This court has reviewed the detailed itemization of hourly charges provided by Plaintiffs and concludes that $9,538.25 of the attorneys' fees requested relate to the claim against Clark. In addition, based upon the date of the charges, this court concludes that $2,339.22 of the costs requested relate to the claim against Clark.

---

[4] Defendants' argument that they were unable to comply with discovery requests because of the illness and death of Defendant Clark is unpersuasive. Based upon the deposition testimony of Pirtle and Sam Britten, this court concludes that Pirtle and Britten had access to the documents and information sought but Defendants made no real attempt to obtain and provide the information until ordered to do so after Plaintiffs filed motions to compel.

[5] Defendants have argued that the hourly rate charged by Plaintiffs' attorneys is excessive and not the "usual and customary rate for the services performed in this community." However, it was reasonable for Plaintiffs to hire attorneys experienced in intellectual property litigation and copyright law to protect their interests. See Helfrich v. Carle Clinic Ass'n, P.C., 328 F.3d 915, 919 (7th Cir. 2003).

Therefore, the attorneys' fees requested from Pirtle and P & C are reduced to $77,001.25 and the costs requested are reduced to $7,107.99. Defendants Pirtle and P & C are ordered to pay these amounts to Plaintiffs. Plaintiffs may pursue an award of their attorneys' fees and costs related to their claim against Clark from Pirtle, as Clark's successor, and from Joan Clark, if she is substituted for Defendant Clark.

IT IS THEREFORE ORDERED THAT:

(1) Plaintiffs are awarded attorneys' fees in the amount of $77,001.25 and costs in the amount of $7,107.99.

(2) Plaintiffs' Motion to Substitute Parties for Deceased Defendant Lonnie E. Clark (#55) is GRANTED in part and reserved in part. The Motion (#55) is GRANTED as to Defendant J.W. Pirtle and Pirtle is substituted for Defendant Lonnie E. Clark. Plaintiffs are allowed 30 days to file a motion seeking judgment against J.W. Pirtle, as successor of Lonnie Clark. A hearing will be held on October 12, 2011, at 3:30 p.m. to consider the Objection filed by Joan Clark, Jeffery Clark and Lonnie E. Clark II to the Motion to Substitute Parties (#55).

ENTERED this 29th day of August, 2011

**s/ Michael P. McCuskey**
MICHAEL P. McCUSKEY
CHIEF U.S. DISTRICT JUDGE